PREGERSON, J.,
concurring.
I concur in the result of this case. I write separately to emphasize the injustice perpetrated by our immigration system in this case and many like it.
Mannaka Oung has not had an easy life. As a small child he was tortured by the Khmer Rouge in his native Cambodia. After his father was killed, his mother fled with Oung, then nine years old, and his siblings to the United States.
In the U.S. Oung had a difficult childhood. He had little family support and *781 oversight. As a result, Oung got into trouble as a teenager and became involved with a Cambodian street gang. In 1993, at the age of 18, Oung pled guilty to shooting at an unoccupied vehicle in violation of California Penal Code § 247(b).[1]
In 1998, Oung moved to Tennessee to start anew, away from “all these gangs.” In 2000, Oung was convicted of aggravated assault causing serious bodily injury under Tennessee Code § 39-13-102, in what can only be characterized as a crime of passion involving Oung’s ex-girlfriend. Oung completed domestic violence counseling after this incident. Since June 2003, Oung has held steady employment working as a metal polish finisher in San Diego, California. Oung’s 71-year-old mother and 30-year-old sister both live in San Diego, California, and have legal status. He married in January 2004, and is the father of a United States citizen daughter born on April 21, 2004.
Oung has maintained a clean record for the last ten years. The record demonstrates that his wife and family benefit from his support and wish him to stay in the United States. I write only to say that, as the facts of this case demonstrate, our immigration laws needlessly separate families, uprooting and removing individuals, such as Oung, who have successfully turned their lives around and should be given a second chance to stay and make positive contributions to our great society. If America is anything, it is a country that gives people a second chance.

. Oung has been a lawful permanent resident since 1983. He was eligible to naturalize in 1988, when he was approximately 13 years old, but did not do so. There are any number of reasons why immigrants do not naturalize once they become eligible, including a lack of understanding of the importance of citizenship. See, e.g., Judith Bernstein-Baker, Citizenship in Restrictionist Era: The Mixed Messages of Federal Policies, 16 Temp. Pol. & Civ. Rts. L.Rev. 367, 374-80 (2007) (explaining that barriers to naturalization include legal status, good moral character, application fees, the complex application process, processing delays, and limited English language skills). * The panel unanimously finds this case suitable for decision without oral argument. See Fed. R.App. P. 34(a)(2).